## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>**RAYMOND HARVEY and LUCY HARVEY,**<br><br>                 **Debtors.** | **Filed / Docketed**<br>**October 16, 2007**<br><br>**Case No. 05-17911-M**<br>**Chapter 7** |
| **RICHARD A. WIELAND, ACTING UNITED STATES TRUSTEE,**<br><br>                 **Plaintiff,**<br><br>**v.**<br><br>**RAYMOND HARVEY,**<br><br>                 **Defendant.** | **Adv. No. 06-01134-M** |

### MEMORANDUM OPINION

In this adversary proceeding, Raymond Harvey ("Harvey" or "Defendant") has admitted that his bankruptcy schedules are replete with errors and omissions, ranging from the failure to disclose assets to the omission of creditors. The question is whether these failures rise to the level of falsification that would justify denial of Harvey's discharge. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. §

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* as it existed prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), as the bankruptcy case

157(a).  This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(J).

**Burden of Proof**

Richard A. Wieland, the acting United States Trustee for this district ("Wieland" or "Plaintiff") contends that Harvey's discharge should be denied under § 727(a)(2)(A) and (B), (a)(3), and/or (a)(4).  In order to prevail under any of these sections, Wieland must prove each statutory element by a preponderance of the evidence.[2]  Should Wieland establish a *prima facie* case for denying the debtor's discharge under § 727, the burden of going forward shifts to Harvey.[3]  The ultimate burden of proof, however, rests with Wieland.[4]  In order to further the policy under the Bankruptcy Code of providing a debtor with a "fresh start," all objections to discharge "should be construed strictly against the creditor and liberally in favor of the debtor."[5]

**Findings of Fact**

Harvey is a retired industrial electrician who spent most of his career working for the Ford Motor Corporation at their glass manufacturing plant in Tulsa.   Harvey's employment with Ford required him to view and construe schematic diagrams while paying great attention to detail.  In addition, Harvey at one point in time held a real estate broker's license.  Between 2002 and early 2005, Harvey also operated a sole proprietorship known as Harvey Antiques, which, as its name

---

from which this adversary proceeding arises was filed prior to the effective date of BAPCPA.

[2]  *See* Fed. R. Bankr. P. 4005; *see also First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991); *cf. Grogan v. Garner*, 498 U.S. 279 (1991).

[3]  *See Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984); *Everspring Enters., Inc. v. Wang (In re Wang),* 247 B.R. 211, 214 (Bankr. E.D. Tex. 2000).

[4]  *See First Union Nat'l Bank v. Golob (In re Golob),* 252 B.R. 69, 75 (Bankr. E.D. Va. 2000) (citing *Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 249 (4th Cir. 1994)).

[5]  *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996).

2

suggests, engaged in the business of buying and selling antique items.  Although no testimony was proffered regarding his educational background, Harvey conveyed himself as an intelligent person with the ability to understand business and financial matters.

In the summer of 2005, Harvey faced difficult financial times.  One creditor, CIT Group, was threatening legal action to recover a judgment against Harvey in excess of $60,000.  In response, Harvey met with Richard White ("White"), an attorney who practiced law in Tulsa.  After that meeting, Harvey made the decision to file a bankruptcy petition.  In preparation for the filing, Harvey met with Kim Allen ("Allen"), a paralegal who worked for White.  As part of the preparation process, Harvey was given a "bankruptcy questionnaire" which required him, among other things, to list all of his assets and all of his liabilities.  The questionnaire requested all of the information necessary for the accurate preparation of bankruptcy schedules.  Included in the questionnaire were requests for lists of all assets that Harvey owned, information regarding any amounts which may have been owed to him, including but not limited to tax refunds, and any information relating to the operation of a business.[6]

White met personally with Harvey and his wife, Lucy Harvey (hereafter collectively referred to as "Debtors") prior to the filing of their bankruptcy case.  The Court finds that, prior to the filing of the case, White had informed Harvey of the need to be truthful with respect to all of the information to be provided to the bankruptcy court, and had specifically informed Harvey that the existence of any and all tax refunds had to be disclosed.[7]  At no time prior to the filing of the

---

[6] *See Plaintiff's Exhibit 4.*  Specific inquiries regarding any business operations of a debtor are found beginning at page 21 of the exhibit.

[7] White testified that he could not specifically recall telling Harvey of the need for full disclosure, but he firmly stated that it was his practice to inform **every** client of the need for full

bankruptcy case did Harvey disclose to White that he expected any tax refund, or that he had operated any manner of business.

Debtors filed an original petition for relief under Chapter 7 of the Bankruptcy Code on October 11, 2005.  Steven W.  Soulé ("Soulé") was appointed to serve as the Chapter 7 trustee.  The petition, schedules, statement and related documents (collectively, the "Bankruptcy Pleadings") contain a number of errors and omissions.  Harvey has stipulated that he failed to disclose the following information in the Bankruptcy Pleadings:

1.      the use of the name Harvey Antiques since 2002;

2.      information about the business of Harvey Antiques, including the status of inventory liquidated for approximately $3,000 in 2005, and the location and custodian of any business records;

3.      the sale of a 1988 Chevy Box Van in July 2005 for $2,100, including but not limited to the failure to disclose the name and address of the transferee;

4.      the remaining business assets of Harvey Antiques, including show cases, a computer, a digital camera, and remaining pieces of pottery and glass antiques inventory;

5.      income from Harvey Antiques from 2002 through 2005 on the Statement of Financial Affairs;

6.      that Harvey had been involved in an investment program over several years, beginning in June 1998 and, as a result, held claims against other third parties including Larry Williams, the Estate of Ed Meeker, ORPEC International, and other

_____

and frank disclosure to the bankruptcy court.  Harvey testified that he did not recall being given any such information.  Having had an opportunity to view the testimony of both of these witnesses, the Court accepts the version of the facts posited by White.

individuals related to a Nigerian oil venture that were not scheduled or disclosed, in the amount of approximately $75,000;

7.  that Harvey had a safe in his home, where collections of coins, silver sheet replicas of international dollars and other valuables were stored, including a stamp collection held for his daughter;

8.  that Harvey failed to disclose a $5,000 personal loan from Pam Worthington in the Debtors' Schedule F;

9.  that Harvey had given a gift of $200 to his son, William Harvey, in January 2005;

10. that Harvey had given gifts to his daughter, Teresa Harvey, in the aggregate amount of approximately $2,000 within one year of the filing of the bankruptcy petition;

11. that Harvey had accounts at the Golden Eagle Credit Union and Communications Federal Credit Union, which were financial accounts owned at the time of the petition or closed within one year prior to the filing of the bankruptcy petition;

12. that Harvey had loaned to Joe Williams in September 2004, the Cargo Mate Trailer for his use, possession, and removal to Alaska;

13. the dates and consideration for numerous consumer credit cards;

14. the dates of automobile loans, including the renewal in May 2005 of the loan secured by a Jaguar for $4,698 and the purchase in August 2005 of a 2001 Ford truck, F350 Supercab XLT for $28,494;

15. the itemized valuable antiques and collectibles, described as household goods, which had been purchased for investment or resale;

16. the litigation brought by Washington Mutual Bank FA for foreclosure of his

5

residence, in the District Court of Tulsa County, CJ-2004-3367;

17.     the potential tax refund for 2005, which was determined to be $6,948 in the return dated March 17, 2006, using the business loss of $26,344 from Harvey Antiques; and

18.     a lease for Harvey Antiques at Persimmon Hollow Antique Mall, in Broken Arrow, OK through October 2005.

It has also been stipulated that the Debtors' Schedule J is inaccurate and fails to disclose:

1.     The separate residence Harvey maintains with separate utilities and expenses related thereto or any of the leasehold improvements he provided, in addition to the household where Mrs. Harvey resides; and

2.     That the monthly expense of $1,382 for various credit card payments were not being paid as of the petition date and were not ongoing monthly expenses of either Harvey or Mrs. Harvey.

With respect to the inventory of Harvey Antiques, Harvey stipulated that his 2005 Federal Income Tax Return stated that the inventory of Harvey Antiques had a cost value at the beginning of the year of $30,158, and was sold for $3,814, with an ending net loss of $26,344.  Harvey liquidated the inventory of Harvey Antiques beginning in January 2005, mostly in garage sales.  He has no records of the sales of these antiques or of what happened to the sale proceeds.  When asked why he failed to disclose the sale of the 1988 Chevy Box Van in July 2005, Harvey testified that it was something he "never thought about again" after the sale was completed, and that he "didn't know that [he] had to tell anybody about it."

As he operated Harvey Antiques, Harvey provided all of the necessary information to his accountant to enable the filing of tax returns reflecting the losses incurred by Harvey in the operation

of the business.  Harvey never provided any of this information to White until after request for the information was made by Wieland.  Upon inquiry, Harvey testified that he never disclosed the existence of Harvey Antiques to White because it was just a "hobby business," and because White never asked.  When asked why he did not list the name "Harvey Antiques" as a name which he had used in the six year period prior to filing bankruptcy, Harvey testified that he did not consider the phrase "Harvey Antiques" to be a "another name."

The First Meeting of Creditors ("341 Meeting") was held in Debtors' case on November 17, 2005.  Roughly 30 minutes prior to the 341 Meeting, the Debtors filed an Amended Declaration regarding their schedules and an Amended Schedule B.  The sole modification contained in this amendment was the addition of a bank account in the name of Lucy  Harvey at Arkansas Valley State Bank.  At the 341 Meeting, Harvey testified under oath that he had read the Bankruptcy Pleadings before he signed them; that he was personally familiar with the information contained in them; that to the best of his knowledge, the information contained in the petition, schedules, statements, and related documents was true and correct and all his assets and liabilities had been disclosed.  Harvey did not disclose his liquidation of the inventory of Harvey Antiques nor did he advise Soulé that Harvey expected to receive a tax refund for the year 2005.  Following his examination of the Debtors and a review of their pleadings and supporting information, Soulé filed a Report of No Distribution on November 18, 2005, indicating there were no assets available for distribution to creditors.

On February 9, 2006, Harvey appeared for a 2004 examination conducted by the Office of the United States Trustee.  This was the first time that  White learned of the existence of Harvey Antiques, and its various business activities.  It was also the first time that White had learned of the

"loan" of the Cargo Mate Trailer to a third party.  At the conclusion of the 2004 exam, White determined that additional amendments to the schedules and statement of affairs were necessary. Even as he prepared these amendments, White was unaware that Harvey had received tax refunds in the years prior to the filing of the bankruptcy case.

There are other significant areas of non-disclosure.  In his original schedules, Harvey had failed to list an individual identified as Pam Worthington as a creditor.  Ms. Worthington, whom Harvey described as a "lady friend," loaned Harvey approximately $5,000 in May 2005.  When questioned as to why Harvey had initially failed to list Ms. Worthington as a creditor, he stated that he had simply forgotten about her.  The loan was made some three months prior to the bankruptcy filing, and Harvey made payments on the loan thereafter.  The Court finds the suggestion that Harvey somehow forgot about this transaction to be incredible, and gives no weight to Harvey's testimony to that effect.

Harvey also failed to disclose in his schedules the existence of an option to purchase certain real estate in Broken Arrow, Oklahoma.  In his schedules, Harvey disclosed that he was leasing the property but failed to disclose that he was maintaining a separate residence there.[8]  At the 2004 examination, Harvey admitted that the lease of this real estate was for a one-year term.  It was later discovered that the lease contained an option to purchase the real property.  After the filing of the bankruptcy case, Harvey executed a contract for deed with respect to this property, which stated that Harvey would make a cash payment of $60,000 to the seller on August 31, 2006.  The payment was not made, and the contract apparently never consummated.  In October 2006, Harvey executed and delivered to the seller of the real estate a quitclaim deed conveying any interest which he may have

---

[8]  At the time the bankruptcy case was filed, Harvey and his wife were separated.

had in this property.  The quitclaim deed was recorded on October 27, 2006, one day after Harvey's bankruptcy case was converted back to Chapter 7 from Chapter 13.

Harvey testified extensively at the trial of this adversary proceeding.  When asked why he did not disclose the assets and liabilities outlined above, he stated that he did not do so because he did not remember them at the time the Bankruptcy Pleadings were prepared, or that he did not provide the information because no one asked him the right questions.  The Court finds his testimony less than plausible.  While there are several examples of inconsistent testimony which could be used to demonstrate Harvey's lack of credibility, two will suffice.  Harvey testified that, with respect to the amendments to the Bankruptcy Pleadings filed after the initial petition, schedules, and statement of affairs, he had no recollection of ever seeing them.  This testimony changed when counsel for Wieland provided Harvey with copies of these pleadings upon which Harvey's "wet ink" signature appeared.  Harvey also testified that one of the reasons he never disclosed the existence of the real estate contract on the Broken Arrow property was because his leasing of the property was a breach of the agreement between the owner of the property and the first lienholder.  According to Harvey, the contract for deed was executed as part of a scheme to deceive the first lien holder and delay or  avoid foreclosure proceedings, done as an apparent favor to his landlord.[9]  While there are certainly many ways to convince a trier of fact of a witness's veracity, confessing to a fraud is not on the list.

Soulé withdrew his Report of No Distribution on February 17, 2006, and filed a Notice of Assets on April 19, 2006. On May 12, 2006, Debtors filed an Amended Creditor List, Amended Declaration, Amended Schedules B, C, D, F, I, and J, Amended Statement of Financial Affairs,

---

[9]  *See Docket No. 36*, p. 142, lines 7 through 25.

Amended Summary of Schedules, and Amended Verification in order to supply previously omitted

information.

### Conclusions of Law

Section 727(a)(4)(A) of the Code provides that a discharge may be denied where the debtor

"knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]"[10]

The United States Court of Appeals for the First Circuit has held that

> the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to
> make certain that those who seek the shelter of the bankruptcy code do not play fast
> and loose with their assets or with the reality of their affairs. The statutes are
> designed to insure that complete, truthful, and reliable information is put forward at
> the outset of the proceedings, so that decisions can be made by the parties in interest
> based on fact rather than fiction. As we have stated, "[t]he successful functioning of
> the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to
> make a full disclosure." Neither the trustee nor the creditors should be required to
> engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.[11]

The Fourth Circuit has held that

> [i]n order to be denied a discharge under this section [§727(a)(4)(A)], the debtor
> must have made a statement under oath which he knew to be false, and he must have
> made the statement willfully, with intent to defraud. The false oath made by the
> debtor must have related to a material matter. Whether a debtor has made a false oath
> within the meaning of § 727(a)(4)(A) is a question of fact.[12]

A statement contained in a debtor's schedules or statement of affairs, or the omission of assets from

---

[10]   § 727(a)(4)(A). This entire paragraph is taken *verbatim* from *Woolman v. Wallace (In re Wallace)*, 289 B.R. 428, 433-34 (Bankr. N.D. Okla. 2003) (hereafter *"Wallace"*), a prior decision of this judge.

[11]   *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) (citations omitted).

[12]   *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987) (citations omitted); *see also Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997) ("In order to deny a debtor's discharge pursuant to this provision, a creditor must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact.").

the same may constitute a false oath for purposes of § 727(a)(4).[13]  Because the debtor is usually the

only person able to testify directly concerning intent, "fraudulent intent may be deduced from the

facts and circumstances of a case."[14]  At least one court has noted that "[w]here assets of some

substantial value are omitted from the schedules, the conclusion that they were omitted purposefully

with the fraudulent intent to conceal the assets in question may be warranted."[15]

> The United States Court of Appeals for the Tenth Circuit has given us further guidance in

the interpretation of § 727(a)(4)(A).  It has held that "[a] debtor will not be denied discharge if a

false statement is due to mere mistake or inadvertence."[16]  We have also been instructed that "an

---

[13]  *See Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990); *see also Perry v. Warner (In re Warner)*, 247 B.R. 24, 26 (1st Cir. BAP 2000) ("A debtor's failure to disclose an interest in real property [in his bankruptcy schedules] would be a material false oath.").

[14]  *Calder,* 907 F.2d at 955-56.  Although not directly on point, the Court has found helpful certain cases dealing with revocation of discharge for failure to disclose assets under § 727(d)(2).  The United States Court of Appeals for the Seventh Circuit has held that

> [t]o find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud.  The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied.  The bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct.  Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances.

*In re Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992) (citations omitted); *see also Kaler v. Olmstead (In re Olmstead)*, 220 B.R. 986, 994 (Bankr. D. N.D. 1998) (quoting *Yonikus*); *see also Rezin v. Barr (In re Barr)*, 207 B.R. 168, 176 (Bankr. N.D. Ill. 1997) (fraud "may be proven by evidence that Debtors were aware the omitted assets existed and that they knew failure to list the assets would mislead creditors or the Trustee").

[15]  *Crew v. Topping (In re Topping)*, 84 B.R. 840, 842 (Bankr. M.D. Fla. 1988) (citation omitted).

[16]  *In re Brown*, 108 F.3d at 1294 (citation omitted).

honest error or mere inaccuracy is not a proper basis for denial of discharge."[17]  The Court is bound

by these pronouncements.

In this case, there is no dispute that the Bankruptcy Pleadings contain false statements (in

the form of omissions of both assets and liabilities) made under oath: the parties have stipulated to

no less than eighteen such omissions.  Taken collectively, the Court is convinced that the false

statements are material: the lack of candor in the Bankruptcy Pleadings has impacted upon the

ability of Soulé to administer this bankruptcy case.  The only question is whether Harvey possessed

the requisite fraudulent intent.

The Court concludes that Harvey possessed an intent to defraud as he failed to fully disclose

his assets and liabilities.  Harvey certainly knows how to deceive: his testimony regarding the

Broken Arrow property and his statement that the lease with an option to purchase was nothing more

than a ruse establishes that.  The Court concludes that Harvey engaged in a concerted effort to

conceal assets (most notably the tax refund, the items in the safe, the lease of the Broken Arrow

property, and the claims related to the Nigerian oil venture), the disposal of assets (the various

"garage sales" of antiques, the loss of the trailer, and gifts to his children), and certain creditors

(most notably Ms. Worthington).  Taken together, these omissions paint a picture of someone

attempting to manipulate the bankruptcy system, hoping to retain assets while saving some of his

creditors from the consequences of his bankruptcy filing.  Such conduct cannot be countenanced.

The Court finds that Harvey has issued a false oath in connection with his bankruptcy case, and that

grounds exist for denial of his discharge under § 727(a)(4)(A).  Having denied Harvey's discharge

on this basis, the Court reaches none of the other grounds for denial of discharge advanced by

---

[17] *Id.* at 1295 (citation omitted).

Weiland.

## Conclusion

Harvey shall not be granted a discharge in this case.  A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith.

Dated this 16th day of October, 2007.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5033.3

13